Alex D. Kruzyk* (to seek admission *pro hac vice*)
Bryan A. Giribaldo (to seek admission *pro hac vice*)
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed classes*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Chelsea James, on behalf of herself and all others similarly situated, | ) <br> ) Case No. <br> ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** <br> ) |
| vs. | ) **JURY TRIAL DEMANDED** <br> ) |
| Utah Sell Now, LLC d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC, Offer Arizona LLC d/b/a Joe Homebuyer Arizona, and JHB Gateway Holdings Inc. d/b/a Joe Homebuyer, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

**Nature of this Action**

1. Chelsea James ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Utah Sell Now, LLC d/b/a Joe Homebuyer ("Joe Homebuyer"), Joe Home Buyer AZ LLC ("JHB AZ"), Offer Arizona LLC d/b/a Joe Homebuyer Arizona ("Offer Arizona"), and JHB Gateway Holdings Inc. d/b/a Joe Homebuyer ("JHB Gateway") (together, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Based on Defendants' conduct, public-facing representations, and franchisee-facing representations, Defendants appear to operate a large-scale national telemarketing enterprise—the likes of which the TCPA has largely done away with—that operates in brazen disregard of the TCPA's restrictions, openly touting that they engage in ongoing "cold call" telemarketing and high pressure sales tactics for the purpose of acquiring consumers' homes for massive discounts on their fair market value, and promptly flipping them to other investors for substantial profits by way of assignment contracts.

3. In doing so, Defendants purport to offer a host of "free" services to consumers to facilitate the sale of their homes, while secretly pricing those "free" services into *massive* discounts on the sales price of those consumers' homes , presumably in an effort to obfuscate their true business model, and buttressing those discounts with simultaneous or immediate profits on the consumers' homes, creating an "effective fee" to Defendants for selling the consumers' homes.

4. Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

5. Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one

advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

## Parties

6. Plaintiff is a natural person who at all relevant times resided in Glendale, Arizona.

7. Joe Homebuyer is a Utah limited liability company that runs a marketing and real estate business headquartered in Bluffdale, Utah.

8. Joe Homebuyer also sells its business model as franchises to interested franchisees, including, upon information and good faith belief, JHB AZ, Offer Arizona, and JHB Gateway.

9. JHB AZ is an Arizona limited liability company that runs a marketing and real estate business headquartered in Phoenix, Arizona.

10. Offer Arizona is an Arizona limited liability company that runs a marketing and real estate business headquartered in Phoenix, Arizona.

11. JHB AZ and Offer Arizona are both owned and operated by Brent Daniels, who holds a real estate salesperson license with the State of Arizona

12. JHB Gateway is also an Arizona limited liability company that runs a marketing and real estate business headquartered in Queen Creek, Arizona.

13. The "Joe Homebuyer" trade name is registered in Arizona to JHB Gateway.

14. JHB AZ, Offer Arizona, and JHB Gateway operate under Joe Homebuyer's branding and ultimate authority.

## Jurisdiction and Venue

15. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(1)(a)(iii), and 28 U.S.C. § 1331.

16. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as a significant portion of the events giving rise to this action occurred in this district.

17. In particular, Defendants directed their solicitation messages to Plaintiff's telephone from this district, and, given that JHB AZ, Offer Arizona, and JHB Gateway are based in this district, upon information and good faith belief, the solicitation messages also originated in this district.

**Factual Allegations**

18. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(602) 366-XXXX.

19. Plaintiff uses her cellular telephone as her personal residential telephone number.

20. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

21. Plaintiff registered her cellular telephone number with the DNC Registry on July 22, 2008, and has maintained that registration through the present date.

22. Starting in July of 2023, Plaintiff received numerous text messages from a rotating series of phone numbers, seeking to solicit Plaintiff to use Defendants in the sale of her home:



23. Plaintiff did not recognize the senders, is (and was) not selling her home, and was not looking to sell her home.

24. Plaintiff responded to the senders solely to identify the entity responsible for sending those messages.

25. When asked for some sort of identification after Defendants sent the unsolicited text messaging, Defendants provided website links to https://joehomebuyer.com/ and https://www.joehomebuyerarizonagroup.com/.

26. Joe Homebuyer's website, https://joehomebuyer.com, explains that Joe Homebuyer seeks to purchase and resell residential real estate.

27. JHB AZ and Offer Arizona's website, https://www.joehomebuyerarizonagroup.com/, is materially identical to Joe Homebuyer's website, and also explains that JHB AZ and Offer Arizona seek to purchase and resell residential real estate.

28. Defendants' websites also advertise that they pair numerous services with their offers to purchase properties from consumers.

29. Implicit among these service offerings is the arranging of title, escrow, preparing paperwork, and all other ancillary services associated with the purchase or sale of a home.

30. Specifically, Defendants represent that they prepare and handle all purchase and sale-related paperwork for sellers,[1] arrange for title, escrow, and closing services,[2] and even provide moving and transportation for sellers.[3]

31. Joe Homebuyer also provides an explanatory brochure that outlines its numerous services, which, although no longer active on its website, upon information and good faith belief, is attached as Exhibit A.[4]

32. In that brochure, Joe Homebuyer describes their purchase process to include: "(2) Investor will evaluate the house, come up with a value for it, determine if any repairs are needed, find out what your goals are, and make an offer that fits their buying criteria and helps you reach your goals"; and "(4) [i]f it's a fit, closing happens at a title company and the title company prepares the documents... the investor buys with all cash so it's a quick close and you get your cash quickly." *Id.* at 6.

33. Moreover, Joe Homebuyer discloses that, in exchange for providing these services, it offers homeowners a reduced price for their homes: "Can you offer a

---

[1] https://joehomebuyer.com/what-we-do/ (last visited March 12, 2024) ("You won't have to handle paperwork accompanied by the waiting, wondering, and hoping.")

[2] https://www.joehomebuyerarizonagroup.com/ (last visited March 12, 2024) ("We handle 100% of everything, the paperwork, title, closing and more!").

[3] https://joehomebuyerfranchising.com/faq/ (last visited March 12, 2024) (they are "different from a real estate agent" because "[w]hether [sellers] need help with *moving logistics or transporting vehicles*, we will do everything we can to make the transition run smoothly!") (emphasis added).

[4] https://joehomebuyer.com/resources/ (last visited March 12, 2024).

reasonable price for my property? Of course! We only offer deals that know are going to work for you. Our offers may be lower than the typical retail cost, but you could save a great deal more time and money with us in the long run."[5]

34. Joe Homebuyer also discloses that "Yes, there most definitly [sic] can be benefits to selling your home through an agent. You can list the home for a lot higher than we can offer[.]"[6]

35. In other words, consumers such as Plaintiff would pay an effective fee to Defendants for their numerous ancillary services through Defendants' payment of a reduced purchase price to those consumers.

36. Thus, upon information and belief, Defendants seek to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, are compensated obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

37. As a result, Defendants would be (and, upon belief and information, are) compensated for their services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

38. In fact, Joe Homebuyer's Vimeo video page—linked on https://joehomebuyerfranchising.com/opportunity/—explains through a series of videos presumably directed to its franchisees, how Defendants seek to overcome a lack of interest or consent, how to talk home sellers into transactions, and how to persuade them to accept lower prices in exchange for transacting with Defendants and using their services.

39. These 96 videos on Joe Homebuyer's Vimeo page reveal a *far* different

---

[5]    https://www.joehomebuyerarizonagroup.com/FAQ (last visited March 12, 2024).

[6]    https://www.joehomebuyerarizonagroup.com/Compare (last visited March 12, 2024).

Class Action Complaint - 7

business than Defendants' whitewashed public-facing representations.[7]

40.     For example, in a video titled "Maximum Allowable Offer," Defendants explain how the "maximum amount you can offer a seller" is calculated by determining the anticipated price of selling the home to a third party, and then multiplying that by a maximum of 70%—while aiming to negotiate a discount lower than 70%—and then subtracting the costs of repair to that property, *and then* subtracting the amount of fee charged by Defendants—an "assignment fee"—to reach a maximum allowable offer value.[8]

41.     In an example included in that video, Defendants suggest that, if they valued a property at a fair market value of $150,000, and anticipated that rehabilitation would cost $15,000, Defendants would seek a minimum $10,000 "assignment fee" for providing their home selling services, resulting in a "maximum allowable offer" to the homeowner of $80,000 for a home Defendants valued at $150,000.[9]

42.     Thus, even Defendants acknowledge that they charge substantial fees to homeowners in exchange for their services, by factoring in multiple discounts and fees into their reduced purchase offers to consumers, and requiring minimum profit margins to then assign or resell the property to third party buyers.

43.     Therefore, in the example immediately above, Defendants would essentially charge the hypothetical consumer $10,000 for providing their home selling services via that reduction in price, and would ultimately offer that consumer a maximum of $80,000 for a property whose fair market value is $150,000.

44.     In another video, titled "Assignment Agreement," Defendants explain how

---

[7]  Defendants' Vimeo page contains at least 8 additional videos that are password protected, suggesting that Defendants intended most of their videos to be available to the public.

[8]  https://vimeo.com/694986451 (last visited March 12, 2024).

[9]  *Id*.

assignment contracts are negotiated and priced, noting that Defendants charge "Assignment Fees" to third party purchasers (after reducing those amounts from the offer made to the homeowner), using an example of Defendants inflating a $220,000 purchase price offer to the homeowner by a $25,900 "assignment fee" before assigning the rights to purchase that home to the third-party purchaser.[10]

45. Therefore, in that example, Defendants *did* charge that consumer $25,900 for providing their "free" home selling services via that reduction in price.

46. In yet another video, titled "What We Do 1-31-19 at 1218 PM (1)," Joe Homebuyer describes itself as a "real estate marketing company" that makes money by, among other things, wholesaling contracts, which it describes as "the art of getting a purchase price well below market value," and with that contract, Defendants have the "option to sell the paper . . . without being the actual end buyer, you are able to connect the seller with the buyer, and you're in the middle by selling the contract through what's called an assignment. You're assigning the contract."[11]

47. In yet another video, Defendants condition their purchase offers to consumers on being able to obtain a substantial assignment fee and profit on each transaction. In a video titled "MAO TEST THE MARKET FOR THE VALUE THROUGH BUYERS LIST (1)," Joe Homebuyer explains that, if third party investors do not offer a sufficiently high price for the assignment of the consumer's home, "you can cancel the contract within that due diligence period."[12]

48. In that same video, Joe Homebuyer further explains that, as an alternative to canceling the contract, Defendants can instead negotiate a reduced price with the seller,

---

[10]    https://vimeo.com/690692964 (last visited March 12, 2024).

[11]    https://vimeo.com/690691920 (last visited March 12, 2024).

[12]    https://vimeo.com/694980526 (last visited March 12, 2024).

Class Action Complaint - 9

after canceling the initial offer, to allow for Defendants to acquire additional profit on that transaction.[13]

49. And, in yet another video, titled "Escrow Hold Back," Joe Homebuyer explains how funds related to the purchase of a home may have a "specific amount" of proceeds tied to the cost of rehabilitation or repair of a property, and remitting those funds only if the costs of rehabilitation are under a certain amount, thereby undercutting Defendants' representation that its services are "free."[14]

50. In yet another video, titled "Hustle Needed with Selver [sic]," Joe Homebuyer provided a training video explaining how the employee convinced an elderly grandmother, who did not have a car, to sell a home that was damaged by her grandchild's methamphetamine use, by, among other things, capitalizing on her lack of a vehicle and offering to drive that homeowner on various errands, all for the purpose of encouraging her to sell the home to Joe Homebuyer.[15]

51. Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her cellular telephone number.

52. The text messages at issue were sent for non-emergency purposes.

53. Upon information and good faith belief, the text messages at issue were sent by Defendants voluntarily.

54. The purpose of the text messages at issue was to advertise and to market Defendants' business or services.

55. Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

---

[13] *Id*.

[14] https://vimeo.com/690693022 (last visited March 12, 2024).

[15] https://vimeo.com/690650456 (last visited March 12, 2024).

56. In fact, in a Vimeo video titled "Outbound caller_ Appointment setter Starting at $15 hourly, in SOUTH JORDAN _ kslcom," Defendants describe their process for hiring cold-calling telemarketers, noting that "cold calling is a profitable revenue channel," adding that a "proactive approach" of calling homeowners without consent is a core portion of Defendants' business.[16]

57. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

58. Plaintiff suffered additional harm due to her frustration and difficulty in identifying the entity and persons responsible for the unwanted advertisement or marketing text messages to her cellular telephone number.

59. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

60. Upon information and good faith belief, JHB AZ, Offer Arizona, and JHB Gateway share an agent/principal relationship with Joe Homebuyer, given that Joe Homebuyer trains and requires JHB AZ, Offer Arizona, and JHB Gateway to follow its operational guidelines as franchisees to its real estate telemarketing enterprise.

61. In the alternative, upon information and good faith belief, and light of their common conduct delivering telemarketing messages to Plaintiff's cellular telephone number on behalf of each other, Defendants act as a joint enterprise for the purposes of their real estate telemarketing enterprise.

**Class Action Allegations**

62. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Utah Sell Now, LLC d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC, Offer Arizona LLC d/b/a Joe Homebuyer Arizona, or JHB Gateway Holdings Inc. d/b/a Joe

---

[16] https://vimeo.com/690694031 (last visited March 12, 2024).

Homebuyer delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Utah Sell Now, LLC's d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC's, Offer Arizona LLC d/b/a Joe Homebuyer Arizona's, or JHB Gateway Holdings Inc. d/b/a Joe Homebuyer's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Utah Sell Now, LLC d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC, Offer Arizona LLC d/b/a Joe Homebuyer Arizona, or JHB Gateway Holdings Inc. d/b/a Joe Homebuyer delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons throughout the United States (1) to whom Utah Sell Now, LLC d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC, Offer Arizona LLC d/b/a Joe Homebuyer Arizona, or JHB Gateway Holdings Inc. d/b/a Joe Homebuyer delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Utah Sell Now, LLC's d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC's, Offer Arizona LLC d/b/a Joe Homebuyer Arizona's, or JHB Gateway Holdings Inc. d/b/a Joe Homebuyer's, or their business partners', goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of Utah Sell Now, LLC d/b/a Joe Homebuyer, Joe Home Buyer AZ LLC, Offer Arizona LLC d/b/a Joe Homebuyer Arizona, or JHB Gateway Holdings Inc. d/b/a Joe Homebuyer, and a telephone number or address at which Utah Sell Now, LLC d/b/a Joe Homebuyer Joe Home Buyer AZ LLC, Offer Arizona LLC d/b/a Joe Homebuyer Arizona, or JHB Gateway Holdings Inc. d/b/a Joe Homebuyer may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

63. Excluded from the classes are Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64. Upon information and belief, the members of the classes are so numerous that joinder of all of them is impracticable.

65. The exact number of members of the classes are unknown to Plaintiff at

this time and can be determined only through appropriate discovery.

66. The members of the classes are ascertainable because the classes are defined by reference to objective criteria.

67. In addition, the members of the classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

68. Plaintiff's claims are typical of the claims of the members of the classes.

69. As it did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

70. As it did for all members of the Sender Identification Class, Defendants delivered solicitation text messages to Plaintiff's telephone number where the subject text messages did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which it may be contacted.

71. Plaintiff's claims, and the claims of the members of the classes, originate from the same conduct, practice, and procedure on the part of Defendants.

72. Plaintiff's claims are based on the same theories as are the claims of the members of the classes.

73. Plaintiff suffered the same injuries as the members of the classes.

74. Plaintiff will fairly and adequately protect the interests of the members of the classes.

75. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

76. Plaintiff will vigorously pursue the claims of the members of the classes.

77. Plaintiff has retained counsel experienced and competent in class action litigation.

78. Plaintiff's counsel will vigorously pursue this matter.

79. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

80. The questions of law and fact common to the members of the classes predominate over questions that may affect individual members of the classes.

81. Issues of law and fact common to all members of the classes are:

   a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

   b. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

   c. For the Sender Identification Class, Defendants' practice of delivering text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

   d. Defendants' violations of the TCPA; and

   e. The availability of statutory penalties.

82. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

83. If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

84. The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

85. The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

86. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

87. The damages suffered by the individual member of the classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

88. The pursuit of Plaintiff's claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

89. There will be no extraordinary difficulty in the management of this action as a class action.

90. Defendants acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

91. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-90.

92. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

93. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

94. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

95. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

96. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

97. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

98. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

99. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-90.

100. A text message is a "call" as defined by the TCPA. *See, e.g., Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the

TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

101. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

102. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

103. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

104. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

105. Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

106. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: March 14, 2024          By: */s/ Alex D. Kruzyk*
                              Alex D. Kruzyk* (to seek admission *pro hac vice*)

Class Action Complaint - 18

Bryan A. Giribaldo (to seek admission *pro hac vice*)
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com
**Pardell, Kruzyk & Giribaldo, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed classes*